IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:12CV026-RJC-DSC

DAWN S. HAYWOOD, )
      Plaintiff, )
 )
vs. ) **MEMORANDUM AND RECOMMENDATION**
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
      Defendant. )
 )

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #8) and "Memorandum in Support ..." (document #9), both filed July 10, 2012; and Defendant's "Motion for Summary Judgment" (document #10) and "Memorandum in Support ... (document #11), both filed August 24, 2012. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

**I. PROCEDURAL HISTORY**

On May 7, 2009, Plaintiff filed an application for a period of disability, Social Security

---

[1] Pursuant to the Pretrial Scheduling Order entered on May 11, 2012, this matter is ripe upon the filing of Defendant's Motion and Memorandum. <u>See</u> Document #7. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") alleging that she was unable to work as of September 7, 2007. (Tr. 160-61).

Plaintiff's application was denied initially and on reconsideration. Plaintiff subsequently requested a hearing which was held on May 25, 2011. (Tr. 34-78).

On July 15, 2011, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. 16-33). Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity during a continuous twelve-month period. (Tr. 22).[2] The ALJ also found that Plaintiff suffered from chronic back pain which was a severe impairment within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 22-23). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[3] to perform light work[4] "except that the claimant must be able to change positions on an occasional basis; must not work around unprotected heights or dangerous machinery; and must only bend, stoop, and twist occasionally." (Tr. 23). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleged. He discounted the credibility of Plaintiff's testimony about the intensity, persistence and limiting effects of her symptoms, and concluded that those symptoms would not preclude the light work

---

[2] The ALJ found that Plaintiff did engage in substantial gainful activity from September 2, 2008 through November 7, 2008. (Tr. 21).

[3] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

described in her RFC assessment. (Tr. 24). Based on this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work as an office manager, customer service representative, or dispatcher. (Tr. 27). The ALJ then correctly shifted the burden to the Commissioner to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, the Vocational Expert ("VE") identified three light jobs (information clerk, photo counter clerk, and storage facility rental clerk) that the Plaintiff could perform and stated that more than 6,400 of those jobs existed in North Carolina. The ALJ found that the VE's testimony provided substantial evidence that there are a significant number of jobs in the national economy that the Plaintiff could perform and that she was not disabled within the meaning of the Social Security Act. (Tr. 28-29).

By notice dated November 23, 2011, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on January 20, 2012. On appeal, Plaintiff assigns error to the ALJ's decision to give less than controlling weight to the opinion of her treating physician, Dr. Sonya Gorski-Rissmiller, and to his assessment of Plaintiff's credibility. See Plaintiff's "Memorandum in Support ..." 15-24 (document #9). Plaintiff also contends that because of these errors, the ALJ's reliance on the VE's testimony was not supported by substantial evidence. Id. at 25. The parties' cross motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether

the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled"at any time, as that term of art is defined for Social Security purposes.[5] Plaintiff first argues that the ALJ failed to afford proper weight to the opinion of her treating physician, Dr. Sonya Gorski-Rissmiller. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." Christian v. Apfel, No. 98-1673, 168 F.3d 481, 1998 WL 911720, at *2 (4th Cir. Dec. 31, 1998) (per curiam, unpublished) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1076-77 (7th Cir. 1992)) (internal citation omitted).

Plaintiff saw Dr. Rissmiller periodically beginning in September 2010. (Tr. 378). On March

---

[5]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

20, 2011, Dr. Rissmiller rendered an opinion based upon a questionnaire provided by Plaintiff's counsel. (Tr. 414). The ALJ thoroughly discussed Dr. Rissmiller's findings:

> Dr. Rissmiller opined that the claimant's low back pain and radiculopathy prevented the claimant from sitting more than three hours in an eight-hour workday; standing/walking more than three hours in an eight-hour workday; lifting more than 10-20 pounds occasionally and 5-10 pounds frequently; tolerating a moderate stress environment; kneeling; bending; and stooping.

(Tr. 26 citing 414-420). The ALJ gave "some weight" to Dr. Rissmiller's opinion to the extent that it limited Plaintiff's bending, stooping, lifting, and twisting. (Tr. 23, finding 6). Dr. Rissmiller further opined that Plaintiff "would be absent from work more than three times per month, would require a five-minute rest break every 90 minutes, and must get up and move around while sitting." (Tr. 26 citing 414-420). The ALJ did not credit this portion of Dr. Rissmiller's opinion. (Tr. 26). The ALJ reasoned that Dr. Rissmiller's opinion was inconsistent with the other evidence of record, which showed mostly normal physical and neurological examinations. (Tr. 26); see also (Tr. 261) (negative x-rays); (Tr. 284) (normal x-rays and MRI); (Tr. 287) (full body scan showing only mild facet syndrome); (Tr. 317) (negative workup, no clear etiology). The ALJ also noted that Dr. Rissmiller acknowledged that the etiology of Plaintiff's pain was questionable. (Tr. 26 citing 421). The ALJ concluded that Dr. Rissmiller's opinion was based largely on Plaintiff's subjective complaints. (Tr. 26). The ALJ also concluded that Dr. Rissmiller had gone out of her way to find something wrong with Plaintiff. (Tr. 26 citing 378).

The ALJ further noted that:

> [t]hree days later, in response to questions from the claimant's attorney, Dr. Rissmiller rendered quite a different opinion. On March 23, 2011, Dr. Rissmiller opined that the claimant could not sit, stand, or walk for greater than 30 minutes; that since the claimant's condition had exceeded five years, it would be statistically unlikely for her to return to employment; and that the claimant was not able to do any type of full-time or competitive work.

(Tr. 26 citing 422). The ALJ gave this opinion even less weight. (Tr. 27). He correctly found that "statements that a claimant is 'disabled' or 'unable to work' are not medical opinions but are administrative findings reserved to the Commissioner." (Tr. 27 citing SSR 96-5p available at 1996 WL 374183); see also 20 C.F.R. §§ 404.1527(d) & 416.927(d) (noting that statements that an individual is disabled are not entitled to any special significance). He also found the limitations imposed by Dr. Rissmiller were inconsistent with Plaintiff's daily activities. (Tr. 27). These activities included regularly walking her dog, preparing her own meals, driving, shopping, knitting, dusting, caring for her personal needs, exercising three times per week, practicing yoga, and traveling to South Carolina to visit her son. (Tr. 58, 60, 67, 197-215, 369). Finally, he found this opinion to be inconsistent with the one rendered by Dr. Rissmiller a few days earlier. (Tr. 27).

As noted above, the ALJ gave several compelling reasons for discounting Dr. Rissmiller's opinions.

When the ALJ does not afford controlling weight to a treating source's opinion, he must consider the length, nature, and extent of the treatment relationship; the opinion's supportability and consistency with the record as a whole; the treating source's area of specialization; and any other relevant factors in determining what weight to afford the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). The regulations also provide that the ALJ's decision should always give good reasons for the weight given to a treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). These regulations do not require the ALJ to address each of the factors in §§ 404.1527 and 416.927. Rather, the ALJ must consider those factors and then provide specific reasons for the weight given to the treating source's opinions. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p, available at 1996 WL 374188, at *5. This is precisely what the ALJ did in his analysis. He acknowledged that Dr. Rissmiller was Plaintiff's treating

physician, but found that her opinions were internally inconsistent, Boyd v. Chater, 70 F.3d 111, at *1 (4th Cir. 1995) (table) (no controlling weight where doctor's reports were internally contradictory); that they conflicted with other substantial evidence in the record, Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) ("if a physician's opinion…is inconsistent with other substantial evidence, it should be accorded significantly less weight); and that they did not square with Plaintiff's daily activities, Russo v. Astrue, 421 Fed. Appx. 184, 191 (3rd Cir. 2011) (no error where ALJ declined to give opinion controlling weight because it conflicted with claimant's "daily activities").

In sum, the ALJ weighed all the evidence in the record, (Tr. 21), and properly concluded that Dr. Rissmiller's opinion was only due some weight. (Tr. 26).

Dr. Stephen Levin, a non-examining physician, assessed Plaintiff's RFC in July 2009. After reviewing nine different sets of notes, he opined that Plaintiff could perform light work, occasionally lift up to twenty pounds, frequently lift up to ten pounds, and stand, walk or sit for six hours in an eight-hour workday. (Tr. 298-309). Dr. Levin also concluded that Plaintiff could only occasionally engage in activities that required climbing and balancing and that she should avoid concentrated exposure to hazards such as machinery and heights. (Tr. 298-309).

Plaintiff faults the ALJ for giving "substantial weight" to Dr. Levin's opinion. To the contrary, the ALJ gave Dr. Levin's opinion "some weight," not "substantial weight." (Tr. 30). The opinion of a non-examining physician may constitute substantial evidence in support of the ALJ's decision when, as here, it is consistent with the record. Smith, 795 F.2d at 345-46. The record shows that: (1) Plaintiff had no trouble ambulating despite claims of severe pain (Tr. 270-71, 349); (2) she seldom appeared to be in acute distress (Tr. 282, 284, 295, 349, 378); (3) she had a normal gait (Tr. 271, 299, 327, 349); (4) she had perfect strength in her lower extremities (Tr. 284, 299,

317); (5) she had an excellent range of motion in her lumbar spine (Tr. 295); (6) the etiology of her pain was unclear (Tr. 317, 408); and (7) her doctors' work ups and findings were basically normal (Tr. 284, 287, 317, 403).

Plaintiff criticizes Dr. Levin for basing his opinion on an incomplete record. (Pl's Mem. 18). But, "the fact that [a physician] did not have access to the entire evidentiary record-because the record was incomplete at the time of the assessment-is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination." Thacker v. Astrue, Cv. No. 3:11CV246-GCM- DSC, 2011 WL 7154218, at *6 (W.D.N.C., Nov. 28, 2011). Plaintiff cites no evidence in the medical record – other than Dr. Rissmiller's opinions – to support a finding of limitations greater than those assessed by Dr. Levin.

Plaintiff next argues that the ALJ's assessment of her credibility is not supported by substantial evidence. The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily

9

activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's chronic back pain – which <u>could</u> be expected to produce some of the pain she claims. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record.

The ALJ discussed the inconsistency between Plaintiff's subjective complaints and the medical record, as follows:

> First, the claimant's allegations regarding the intensity of her pain and its limiting effects are not consistent with the clinical findings and observations contained in the record. Most notably, both an x-ray and an MRI of the claimant's lumbar spine taken in September 2007 came back basically normal, showing only mild facet syndrome. [Tr. 287]. Additionally, at an examination in October 2007, Dr. Robert Giedraitis observed that the claimant had no sitting intolerance, was in no acute distress, and had normal sensory motor function in both lower extremities. [Tr. 282]. The claimant also consistently had 5/5 strength in her lower extremities. [Tr. 264, 284, 295, 350, 390]. In March 2008, the claimant reported to the emergency room stating that her back and leg pain was a 9 out of 10; however, notes indicate that the claimant was able to ambulate normally despite the alleged pain. [Tr. 270-71]. At both consultive examinations, it was observed that the claimant was able to get on and off the examination table, could dress and undress without assistance, had a normal gait, had normal range of motion in her cervical and thoracolumbar spine, and did not require an assistive device for ambulation. [Tr. 295, 349, 350]. Finally, the claimant's pain clinic noted that the claimant had excellent strength and range of motion in her lumbar spine. [Tr. 405].

(Tr. 24).

In making his credibility determination, the ALJ also considered Plaintiff's activities of daily living. "The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). As the ALJ found:

> The claimant's allegations are also not consistent with her reported activities. Most notably, the claimant worked at least 36 hours per week for over two months in

10

> 2008. [Tr. 218]. The claimant described this job as walking 15 minutes per day, standing 5 minutes per day, sitting seven hours per day, stooping 30 minutes per day, and using technical knowledge or skills. [Tr. 287]. This work is inconsistent with claimant's allegation that she could not sit for any extended period of time. Additionally, in May 2009, the claimant reported that she took her dog out three times per day, fed and brushed her dog, fixed herself food, did laundry, drove a car, shopped in stores for clothes and groceries, and dusted. [Tr. 197,199-214]. In April 2010, the claimant took a five-day trip to the beach. [Tr. 345]. In August 2010, the claimant admitted that she could care for her personal needs, simply at a slower rate. [Tr. 250]. In October and November 2010, the claimant…indicated that she exercised more than three times per week. [Tr. 369]. At the hearing, the claimant testified that she drives, knits, stretches, does yoga, takes care of her personal hygiene, goes to Target on the weekends, gets the mail, and dusts. [Tr. 58, 59, 60, 61, 65, 66, 72]. She further testified that in March 2010, she traveled to Gaffney, South Carolina where she went out to dinner for her son's birthday and sat while he shopped at the outlet mall. [Tr. 67, 68, 69]. [Furthermore] when asked whether she believed she could go back to work [after being fired in November 2008], she replied that she was "really trying."

(Tr. 24-25, 40). The evidence of Plaintiff's regular activities supports the ALJ's credibility determination. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (finding that the pattern of claimant's daily activities suggested that he was not disabled).

The ALJ also noted an inconsistency between Plaintiff's subjective complaints and her compliance with treatment, stating:

> The claimant's treatment history…calls her credibility into question. The record shows that the claimant has been treated at four different pain clinics, having violated her pain contract with Dr. Taub and having been dissatisfied with Dr. Aronoff's method of conducting examinations and recommended prescriptions. [Tr. 64, 278]. The record shows…that the claimant was also discharged from both Southeast Pain and Presbyterian Pain Clinic; however, at least one of these terminations was due to the inability to pay her bill. [Tr. 317, 321]. Also, in April 2010, the claimant…requested to be taken of a prescribed fentanyl patch which she reported gave her excellent pain relief, because she did not want to patch to show while she was on vacation at the beach. [Tr. 345]. Furthermore, in June 2010, the claimant reported that she was not taking any prescription medication for her allegedly disabling back pain. [Tr. 349]. If the claimant were in as much pain as she alleges, one would think that she would be more compliant with recommended treatment.

(Tr. 25). Mickles, 29 F.3d at 930 ("an unexplained inconsistency between the claimant's

characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility").

Finally, Plaintiff's argues that because of the errors alleged above, the ALJ's RFC determination was flawed and "the Vocational Expert's testimony...cannot be used to meet the Commissioner's burden of proof at step five that there is work [Plaintiff] can perform in the national economy." Document #9 at 25. Having concluded that the ALJ's evaluations of the treating physician's opinions and Plaintiff's credibility were supported by substantial evidence, this assignment of error fails as well.

Although the medical records establish that the Plaintiff experienced pain to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that the Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #8) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #10) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: August 27, 2012

David S. Cayer
United States Magistrate Judge